# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) ) ) | |
| v. | ) ) | Case. No.  1:13-CR-58 (ABJ) |
| **JESSE L. JACKSON, JR.,** | ) ) ) | |
| **Defendant.** | ) ) | |

## JESSE L. JACKSON, JR.'S RESPONSE
## TO THE GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
William L. Drake (D.C. Bar #990244)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C.  20036-1795
(202) 429-3000
rweingarten@steptoe.com
bheberlig@steptoe.com
wdrake@steptoe.com

*Counsel for Defendant Jesse L. Jackson, Jr.*

Dated:  June 17, 2013

## **TABLE OF CONTENTS**

                                                                                                                                         **Page**

I.     INTRODUCTION ......................................................................................................... 1

II.    THE COURT SHOULD NOT ORDER RESTITUTION OR, IN THE
       ALTERNATIVE, ORDER THAT RESTITUTION BE PAID THROUGH
       FORFEITURE ............................................................................................................... 1

       A.     Restitution Is Not Appropriate in This Case in Which the "Victim" Is an
              Alter Ego and Co-Conspirator of the Defendant ........................................................ 1

       B.     The Court Should Not Appoint a Monitor ................................................................ 3

       C.     Should the Court Order Restitution, It Should Be Paid Through Forfeiture
              and Not Be Double-Assessed ................................................................................... 4

III.   MR. JACKSON HAS NO ABILITY TO PAY A FINE ........................................... 5

IV.   THE GOVERNMENT'S REFERENCE TO THE INVESTIGATION OF FORMER
       GOVERNOR BLAGOJEVICH IS INACCURATE AND IRRELEVANT TO THE
       COURT'S DECISION ................................................................................................. 7

V.    IN THE EVENT THE COURT ORDERS STAGGERED INCARCERATION OF
       MR. AND MRS. JACKSON, MR. JACKSON SHOULD SERVE HIS SENTENCE
       FIRST ............................................................................................................................ 8

VI.   CONCLUSION ............................................................................................................. 9

I.  **INTRODUCTION**

As explained in his Sentencing Memorandum, Mr. Jackson accepts full responsibility for the conduct described in the Statement of Offense and in the Government's Memorandum in Aid of Sentencing ("Gov't Memo"). In this Reply, Mr. Jackson only seeks to clarify certain positions taken in the Government's Memorandum that bear on the following points:

(1) the Court should not order restitution or, in the alternative, should credit the forfeiture payments to restitution;

(2) Mr. Jackson has no ability to pay a fine;

(3) Mr. Jackson's cooperation with the investigation and trial of former-Governor Rod Blagojevich has no bearing on the appropriate sentence in this case; and

(4) in the event the Court orders both Mr. and Mrs. Jackson to be incarcerated and staggers their sentences, the family's financial situation suggests that Mr. Jackson should serve his sentence first.

II.  **THE COURT SHOULD NOT ORDER RESTITUTION OR, IN THE ALTERNATIVE, ORDER THAT RESTITUTION BE PAID THROUGH FORFEITURE**

   A.  **Restitution Is Not Appropriate in This Case in Which the "Victim" Is an Alter Ego and Co-Conspirator of the Defendant**

While restitution to the victim of an offense is typically required under the Mandatory Crime Victim's Rights Act ("MCVRA"), 18 U.S.C. § 3663(a), it should not be ordered, where, as here, the "victim" of an offense is the alter ego or a co-conspirator of the defendant. Restitution is therefore inappropriate in this case. Mr. Jackson's agreed upon forfeiture of the proceeds of his conduct are a sufficient punishment.

In *United States v. Emor*, 850 F. Supp. 2d 176 (D.D.C. 2012), the defendant founded and led a school for special needs students and was convicted of taking school funds for his own

personal use. 850 F. Supp. 2d at 179-81. The defendant dominated the school's board of directors, bookkeeper and staff, who facilitated and covered up his misappropriation by telling outside auditors the funds were spent on legitimate purchases. *Id*. at 184-185, 199-200, 208. The court found that "[t]he evidence is unmistakable that during the period of the fraud scheme [the defendant] controlled every facet of [the school] and its finances, including the decisions made by its Board of Directors." *Id*. at 200. The defendant co-mingled the school's funds with his personal funds and "treated [the school's] bank accounts as his own, routinely paying for purchases large and small with a debit/credit card that drew directly from those funds." *Id*. at 208.

While the court found that the defendant in *Emor* had misused over $2 million in school funds for clothing, jewelry, and liquor, among other items, it declined to order restitution to the school based on two theories. *Id*. at 188, 204. First, the court found that, due to his domination of the board, the staff and the organization's finances, the defendant was the school's alter ego throughout the period of the scheme and that to order restitution to the school would "sanction a fraud, promote injustice, and lead to an evasion of legal obligations." *Id.* at 208 (*quoting Bufco Corp. v. N.L.R.B.*, 147 F.3d 964, 969 (D.C. Cir. 1998)). Second, the court found that, to the extent the school operated in any way independently from the defendant, it did so as a co-conspirator, not as a victim. *Id*. at 210. The court determined that "[t]he record in this case amply supports a finding that [the school] participated in [the defendant's] fraud" and that "[t]o the limited extent that [the school] as an institution could be said to have any independence from [the defendant], . . . it fully sanctioned and participated in his fraudulent diversion of . . . funds for his own benefit. For this reason, the Court does not consider it to be a victim entitled to restitution under the MCVRA." *Id*. at 210.

The facts and holding of *Emor* are directly applicable here.[1]  Jesse Jackson, Jr. and Jesse Jackson, Jr. for Congress were essentially alter egos.  Mr. Jackson controlled his campaign organization and its spending, which had as its sole purpose his continued reelection to Congress.  Campaign funds and Mr. Jackson's personal funds were comingled.  Mr. Jackson used a campaign credit card for personal purchases.  In addition, as in *Emor*, Jesse Jackson, Jr. for Congress was a co-conspirator in, not a victim of, his misappropriation.

Restitution should not be made to an organization that is an alter ego or co-conspirator of the defendant.  Jesse Jackson, Jr. for Congress was both to Mr. Jackson.  Ordering him to pay restitution to his own campaign as a "victim" of his crimes would not serve the traditional goals of restitution and is unnecessary in this case.  Instead, Mr. Jackson should be ordered to pay the agreed-upon forfeiture money judgment to the United States Treasury so as not to create a windfall for his campaign committee and create unnecessary administrative burdens associated with the wind down of the committee.

### B. The Court Should Not Appoint a Monitor

Because restitution is unwarranted, there is also no need for a Court-appointed monitor.  While the Government is correct that the campaign committee must be wound down, the Federal Election Commission has processes and procedures for doing so without this Court's intervention.

The Government correctly points out that residual funds that a campaign possesses can go to a number of different entities, including charitable organizations; national, state, and local party committees; and state and local candidates.  Gov't Memo at 40 *citing* 2 U.S.C. § 439a; 11

---

[1] The Government largely agrees, stating in its Memorandum in Aid of Sentencing that "[t]o be sure, *Emor* could provide justification for simply declining to order Defendant to pay restitution to the Campaign in this case." Gov't Memo. at 43.

C.F.R. § 113.2.  If the Court were to appoint a monitor and order restitution to be paid to the campaign, the monitor would need to decide which charities, political parties and candidates would be the beneficiaries of the restitution funds and which of those groups would even be willing to accept those donations.  The Court would presumably need to supervise its appointed monitor, including his or her selection of charities and political groups that would receive funds from the campaign.  And the monitor would need to be paid for these services, which could diminish the amount of funds that would otherwise be paid to the Treasury.  All of this would be avoided if the Court declines to award restitution and thus eliminates the need for a monitor.[2]

### C. Should the Court Order Restitution, It Should Be Paid Through Forfeiture and Not Be Double-Assessed

In the event the Court decides that restitution to Mr. Jackson's campaign is appropriate, that restitution should be paid out of the proceeds of the forfeiture money judgment.  Mr. Jackson should not be double-assessed forfeiture and restitution.

Mr. Jackson agreed in his Plea Agreement to the forfeiture set forth in the Forfeiture Allegation in the Information to which he pleaded guilty.  Plea Agreement § 11 [Dkt. 8].  The property subject to forfeiture includes a money judgment in the amount of $750,000.  Information, Forfeiture Allegation ¶ 1.a. [Dkt. 1].

The Government has agreed "to make a non-binding recommendation to the Asset Forfeiture and Money Laundering Section at the Department of Justice that any monies obtained from the defendant through forfeiture be distributed to the victims of the offense and credited against any restitution order entered in this case." Plea Agreement § 11 [Dkt. 8].  The Government has identified Jesse Jackson, Jr. for Congress as the victim in this case.  Gov't

---

[2] Because the campaign has very few remaining assets, the need for a monitor would only arise if the Court orders restitution to the campaign.

Memo, p. 40 [Dkt. 26]. Therefore, Mr. Jackson understands that while the Government seeks the agreed-upon forfeiture from Mr. Jackson of $750,000 and a restitution order from the Court of $750,000 to be paid to Jesse Jackson, Jr. for Congress, it does not advocate that Mr. Jackson pay a total of $1,500,000. Rather, the Government seeks $750,000 in forfeiture and proposes that it be credited against any restitution order. If restitution is awarded, Mr. Jackson agrees that he should only be required to pay $750,000 in total. In sum, in the event the Court orders restitution, Mr. Jackson respectfully requests that the Court permit such restitution to be satisfied by the proceeds of Mr. Jackson's forfeiture, to avoid double assessment of restitution and forfeiture.

## III. MR. JACKSON HAS NO ABILITY TO PAY A FINE

The stipulated Sentencing Guidelines fine range is $10,000 to $100,000.[3] Plea Agreement § 4.C. [Dkt. 8]. Mr. Jackson has no ability to pay a fine within this range, and the Court should not sentence Mr. Jackson to pay a fine in addition to the agreed upon forfeiture.

Sentencing Guideline § 5E1.2 states that "[t]he court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine."

> In determining whether to impose a fine [as a criminal sentence], and the amount, time of payment, and method of payment of a fine, the court shall consider, in addition to the factors set forth in section 3553(a) –
>
> (1) the defendant's income, earning capacity, and financial resources;

---

[3] Because the Probation Office calculated a Total Offense Level of 21, rather than 23 as stipulated in the Plea Agreement, the Draft Pre-Sentence Investigation Report ("Draft PSIR") determined the applicable fine range to be $7,500 to $75,000. Draft PSIR ¶ 152.

> (2) the burden that the fine will impose upon the defendant, any person who is financially dependent on the defendant, or any other person (including a government) that would be responsible for the welfare of any person financially dependent on the defendant, relative to the burden that alternative punishments would impose;
>
> (3) any pecuniary loss inflicted upon others as a result of the offense;
>
> (4) whether restitution is ordered or made and the amount of such restitution;
>
> (5) the need to deprive the defendant of illegally obtained gains from the offense;
>
> (6) the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence; . . .

18 U.S.C. § 3572(a). 18 U.S.C. § 3572(b) states that "[I]f, as a result of a conviction, the defendant has the obligation to make restitution to a victim of the offense, other than the United States, the court shall impose a fine or other monetary penalty only to the extent that such fine or penalty will not impair the ability of the defendant to make restitution."

The Draft PSIR analyzed Mr. Jackson's income and assets and found that he is unable to pay any fine. The Probation Office determined that Mr. and Mrs. Jackson have a negative monthly cash flow. Draft PSIR ¶ 119. The report also determined that Mr. and Mrs. Jackson's net worth is lower than the amount of the agreed-upon forfeiture ($750,000), and is largely made up of the equity in their homes in Chicago and Washington, two retirement accounts and their automobiles.[4] *Id*. The Draft PSIR concluded that "[u]pon review of available information regarding the defendant's financial profile, and considering the negative monthly cash flow, the

---

[4] The Draft PSIR included a typo that valued an IRA held by Mr. Jackson as worth $3,904,202.50 rather than the correct amount of $39,042.025. The Probation Office has informed counsel that the correct amount will be included in the Final Pre-Sentence Investigation Report submitted to the Court.

defendant *does not appear to have ability to pay a fine within the recommended guideline range* in addition to forfeiture and potential restitution." Draft PSIR ¶ 130 (emphasis added).

Mr. Jackson's Sentencing Memorandum described in detail the 18 U.S.C. § 3553(a) factors that apply to his sentencing. [Dkt. 27] In addition to those factors, the § 3572(a) factors must also be considered. Mr. Jackson has no income other than Social Security payments and Federal Employee Retirement System payments, which will be suspended in the event he is incarcerated. Draft PSIR ¶ 121. Due to his health issues and the possibility of incarceration, Mr. Jackson has no earning capacity and will have none until the completion of any sentence ordered by the Court. A fine will impose a great burden on Mr. Jackson, Mrs. Jackson and their two minor children. Forfeiture of the proceeds of Mr. Jackson's conduct, as agreed to in the Forfeiture Allegation will deprive him of any illegally obtained gains. His net worth is less than the amount of the money judgment agreed to with the Government, and therefore any fine assessed by this Court will impair Mr. Jackson's ability to satisfy the forfeiture order. Information, Forfeiture Allegation ¶ 1.a. [Dkt. 1]. Accordingly, the Court should waive any fine in this case.

## IV. THE GOVERNMENT'S REFERENCE TO THE INVESTIGATION OF FORMER GOVERNOR BLAGOJEVICH IS INACCURATE AND IRRELEVANT TO THE COURT'S DECISION

In its Memorandum in Aid of Sentencing, the Government falsely insinuates that Mr. Jackson took part in a scheme in 2008 to provide political contributions to former-Illinois Governor Rod Blagojevich in order to be appointed to President Barack Obama's newly vacant United States Senate seat. Gov't Memo. ¶¶ 31-33. References to the investigation of Mr. Blagojevich are gratuitous and irrelevant. None of the allegations against Mr. Blagojevich related in any way to the conduct in the Statement of Offense. Furthermore, Mr. Jackson fully cooperated with the government's investigation and was never charged with any crime related to

Mr. Blagojevich. Indeed, Mr. Jackson testified as a *witness* at the Blagojevich trial and provided important testimony that contributed to his conviction.

Simply put, Mr. Jackson did not direct or know of any offer to provide campaign funds to Mr. Blagojevich in exchange for Congressman Jackson's appointment to the Senate. Mr. Jackson acted honorably at all times and did not violate any House rule or federal law in connection with the Senate appointment process. The Government's references to the Blagojevich scandal are unnecessary and inaccurate. They should be ignored by the Court.

**V.  IN THE EVENT THE COURT ORDERS STAGGERED INCARCERATION OF MR. AND MRS. JACKSON, MR. JACKSON SHOULD SERVE HIS SENTENCE FIRST**

Mr. Jackson appreciates the Government's position that his two minor children should not be left without a parent and, therefore, that the Court should stagger any sentences of incarceration imposed on Mr. and Mrs. Jackson. Mrs. Jackson has requested a sentence of probation. However, in the event that the Court sentences Mrs. Jackson to a period of incarceration, Mr. Jackson respectfully requests that he be allowed to serve his sentence first.

Mr. Jackson's health issues preclude him from working at this time. If he serves his period of incarceration first, Mrs. Jackson would be able to work and could stabilize the family's finances. By the time Mr. Jackson completes his sentence, the family would not be in the significant financial peril it is in today. To be sure, Mr. Jackson has asked the Court for a below-Guidelines sentence so that he may be released as soon as possible to continue his mental health treatment. However, the strain of waiting to begin serving his sentence would not be beneficial to Mr. Jackson's state of mind or mental health. Accordingly, if the Court declines to sentence Mrs. Jackson to probation, Mr. Jackson urges the Court to stagger their sentences and order Mr. Jackson to serve his sentence first.

## VI. CONCLUSION

For the reasons set forth above and in Mr. Jackson's Sentencing Memorandum, the Court should (a) impose a below-Guidelines sentence of incarceration, (b) decline to order restitution or, in the alternative, credit the forfeiture payments against any restitution order, (c) decline to impose any fine due to Mr. Jackson's inability to pay, and (d) order Mr. Jackson to serve his sentence first in the event that the Court sentences Mr. and Mrs. Jackson to staggered terms of incarceration.

Respectfully submitted,

 /s/ Brian M. Heberlig
Reid H. Weingarten (D.C. Bar #365893)
Brian M. Heberlig (D.C. Bar #455381)
William L. Drake (D.C. Bar #990244)
Steptoe & Johnson LLP
1330 Connecticut Avenue, N.W.
Washington, D.C. 20036-1795
(202) 429-3000
rweingarten@steptoe.com
bheberlig@steptoe.com
wdrake@steptoe.com

*Counsel for Defendant Jesse L. Jackson, Jr.*